## VALIDITY OF A BOND SIGNED IN BLANK.

Common Pleas Court of Cuyahoga County.

CHARLES W. SOUHRADA AND CHARLES WEINSTEIN v. EDWARD
DAVID, ADMINISTRATOR DE BONIS NON OF THE ESTATE OF
MARY GARBARINI, DECEASED, AND ELIZABETH
GILBERT.

Decided, January, 1914.

*Sureties—Administrator's Bond Signed in Blank Enforcible—Tendency
of Modern Authority with Reference to Technical Defenses by
Sureties.*

1. One who signs in blank the printed form of an administrator's bond
   consents by implication that the blank spaces shall be filled in, and
   in the absence of fraud he is liable on the instrument so executed.
2. A claim of fraud, in securing the signature of the surety on an ad-
   ministrator's bond, can not be based on the ground that the bond
   was signed on the representation and in the belief that G was to
   be appointed administrator, when it appears that the application
   book in the probate court showed at the time the bond was signed
   and for sometime theretofore that it was the wife of G who was
   seeking appointment to administer the estate.

*E. J. Hart,* for plaintiff in error.
*David & Heald,* contra.

FORAN, J.

This case comes into this court on error to the municipal court.
It was tried to the court below upon an agreed statement of facts,
from which it appears that one Mary Garbarini died intestate
October 9, 1904, leaving surviving her, as heirs at law, her hus-
band and three children. The widower was known as James
Gilbert, and the parties will be referred to herein under or as
bearing that name.

Elizabeth Gilbert, a sister of James Gilbert, widower of the
decedent, on October 27, 1904, filed her application for letters
of administration, and on January 14, 1905, was appointed and
qualified as administratrix of the estate of the decedent. The

plaintiffs in error, Weinstein and Souhrada, signed her bond as sureties December 31, 1904, The bond was in the usual printed form, and at the time it was signed spaces for the amount or penalty, date, name of decedent, and the names of the administratrix and sureties were blank or unfilled. The blanks, however, were filled in before or at the time the bond was approved and accepted by the probate court.

On December 30, 1908, Elizabeth Gilbert resigned, owing the estate $606.42; and on January 18th, 1909, the defendant in error, Edward David, was appointed and qualified as administrator de bonis non of said estate, and brought this action to collect the amount due the estate. Judgment was rendered in his favor in the court below for the amount due, together with interest to the date of the judgment.

The plaintiffs in error, Weinstein and Souhrada, claim they are not liable, for the reason, first, that at the time they signed the bond the spaces for the name of the principal, Elizabeth Gilbert, and the name of the decedent were blank or unfilled; and secondly, because they signed the paper or the instrument at the instance of James Gilbert, the widower, who they claim, represented to them that he intended to be appointed administrator, and that therefore they never signed a bond for Elizabeth Gilbert.

Many authorities are cited by counsel for plaintiffs in error, divisible into two classes—those relating to the construction of what might be termed bonds complete in form when signed or executed, and those relating to bonds having unfilled blank spaces at the time of execution. With the first class, we are not here concerned, except in so far as they might throw light on the other phase of the question.

As a general rule, when a man obligates himself to become responsible for the faithful performance of the official duties of another, he does so as a matter of accommodation, and there is no other consideration for so doing except that presumed to arise from the solemnity of the act. It is for this reason that bonds of this character, when complete as to form, are always strictly construed. A man who, without consideration or pro-

tection, becomes responsible for the debt or default of another, is given such protection by the law as can be given without manifest injury to others who are or may be innocent parties. The obligation upon which he is sought to be charged must be in writing, so that the precise terms of the obligation may be known and this writing will be strictly construed in his favor; and as a rule, oral testimony will not be permitted to alter, change or supply defects or omissions in the written instrument. This rule was rigidly enforced in *Hall* v. *Williamson*, 9 O. S., 17. The judgment for which Hall became responsible in this case was named in the bond as $2,300, and plaintiff was not permitted to show that the judgment was, as a matter of fact, $2,346,06; and not only because of the doctrine of strict construction, but perhaps for the reason, cognate thereto, that there might be another judgment against the principal for the precise amount of $2,346.06.

Another striking instance of the application of the rule is *McGovney* v. *State*, 20 Ohio, 95. In this case Joseph L. Findley, the decedent testator, was named in the bond as James L. Findley. The surety, so far as the bond showed, became obligated to answer for the default of the executor of the estate of James L. Findley, and it was sought to extend the liability by implication beyond the strict terms of the bond or contract, and by parol testimony, upon the application of the rule *id certum est, quod certum potest,* but the court, remarking or speaking on the liability of sureties, says: "They are mere sureties, and as such may demand to be brought strictly within the terms of the obligation before they are charged."

These two cases fully exemplify the rule of strict construction as applied to bonds complete in form.

An examination of the authorities and adjudicated cases relating to the liability of persons signing blank bonds or instruments under seal clearly shows that the ancient rule or doctrine of the common law has, by reason of precedent and statute, undergone considerable modification. A bond signed in blank is really *carte blanche,* or a paper duly authenticated so far as signature is concerned, and given to another to be filled at the

latter's discretion, and thus giving authority with respect to some particular matter, without condition or qualification.

In *Cross & Bizzell* v. *State Bank*, 5 Ark., 531, the court says:

"The rule is well established that the signing of a blank paper confers upon the holder an unlimited letter of credit, and that an abuse of the confidence which it imports affords no remedy to the maker of it."

This was always the rule with respect to negotiable instruments. A distinction, however, has been ever insisted upon as between a negotiable instrument and a bond or deed. This distinction is based upon considerations that are not as cogent today as they were in ancient times. A promissory note, from its commercial character, imports consideration; and where it is signed in blank and passes into the hands of persons not privies, in the course of trade, business and commercial considerations demand that the signer be absolutely estopped from denying its validity for any reason. A bond is said to import consideration from the solemnity of its execution. By the old common law three things were essentially necessary to constitute a deed or bond—writing, sealing and delivery—and, when duly executed, the parties were concluded by its terms. This conclusiveness arose from the great deliberation and reflection which were said to accompany each successive step necessary to constitute it a final act. Under modern business, commercial and trade conditions, much of this supposed solemnity has wholly disappeared. The ancient wax impression seal gave way to the scrawl, scrath, or even blot seal, and finally disappeared altogether in this state, and perhaps in many others, so far as natural persons are concerned.

. Is there any real or substantial reason why the *carte blanche* rule should not be applied to the ordinary bond signed in blank, other than that found in ancient rules and precedents, many of which have become obsolete because of the changed circumstances and conditions of modern social and business activities? Even the doctrine of the celebrated Dartmouth College case, the most famous case decided by the Supreme Court of the United States, had to be limited; and limitations placed upon the doctrine as

expressed in the Charles river bridge case and the National turn-pike case delivered the sovereign states of the Union from the grasp of monopolies. When a man signs an appeal or stay bond, for instance, he thrusts himself between a creditor and his debtor; he stops for a time the machinery of the law, which the creditor has invoked, and obligates himself to pay the debt if the debtor fails to do so or, having become insolvent, is unable to do so When the debtor fails or is unable to pay, and suit is brought upon the bond, why should the surety be permitted, under the rule of strict construction, to avail himself of every possible technicality the ingenuity of counsel can devise? He knew what he was doing when he signed the bond, and must be presumed to have fully appreciated the possible consequences of his act; and if any one is to suffer, it ought not to be the person who was prevented from collecting a just debt by the voluntary act of the surety.

The doctrine of strict construction as applied to bonds in Ohio and other states is based upon an ancient rule found in *Perkins*, Section 118, which reads:

"If a common person seal an obligation, or any other deed, without any other writing in it, and deliver the same unto a stranger, man or woman, it is nothing worth, nothwithstanding the stranger make it to be written, that he who sealed and delivered the same to him is bound unto him in 20 pounds."

This rule is so old that the work, *Perkins on Contracts*, I believe, is not found in the law library now in daily use. The librarian informs me that it is probably packed away among other forgotten and obsolete authorities, at least it is no longer called for by members of the bar. This authority is cited in old English cases and in the early American cases in support of the doctrine of strict construction as applied to bonds incomplete in form. It became the settled law upon the subject, but its enforcement resulted in such evident injustice that the Legislature of Ohio, in March, 1883, passed an act abrogating the rule so far as filling in the amount or penalty of a bond after it is signed is concerned, provided the amount be filled in before or at the

time of the approval or acceptance of the bond. This act is known as Section 5 of the General Code. The obvious inference from the rule found in *Perkins,* Section 118, as above quoted, is that the bond "is nothing worth" if it contain no writing but the signature; and of course it followed naturally that, where a bond in the usual printed form having blank spaces for date and names and other minor details was signed before these blanks were filled, it was "nothing worth" as a bond. Courts, however, found that this view would work manifest injustice, injury and wrong, and finally settled upon the doctrine that only material blanks need be filled before signing.

The rule laid down in *State* v. *Boring,* 15 Ohio, 507, is that, "In the absence of a statute, a material part of an instrument under seal can not be added after execution, except in pursuance of authority under seal." That is, if one man signs a bond having unfilled blank spaces, and delivers it to another, these blanks, if they are material, can not be filled in by the holder, unless he has authority under seal to do so. As private seals are abolished in this state, a written authority to fill in the material blanks will be sufficient.

If we are to follow this rule, it becomes important to know what a material blank is. Material really means essential or necessary or important; but these words are no more illuminative than the word material. If the *carte blanche* rule is not to apply, and the hoary, moss-incrusted Perkins rule is to govern, it is easy to see that the amount or penalty is a material part of a bond. So, too, the name of the obligee, as held in *State* v. *Watson,* 4 O. D. (Reprint) 526; for if authority to fill the blank is denied, the bond without the name of the obligee would be payable to nobody, and no one would have a right to bring suit upon it. In the law of evidence we say a question is material if it has such relation to the matter in controversy that it may or ought to have some influence upon the determination of the cause being tried. So here it may be said that a material blank is one that has such relation to the bond and the parties thereto that the rights of the parties can not be determined if the blanks were not filled. In the bond under consideration, at the time

Weinstein and Sauhrada signed it, the name of the obligee, the state of Ohio, appeared thereon; the amount or penalty, $2,000, by force of the statute, Section 5, General Code, also appeared thereon, and the name of the obligor or principal, Elizabeth Gilbert, was written at the bottom thereof. The signatures of the sureties are written under her signature, and it will be presumed her signature was first thereon written, as the agreed statement of facts is silent as to this matter. The claim, however, is, that the bond is void because her name, that is, Elizabeth Gilbert as principal, and the name of the decedent, were not inserted in the body of the bond. Is this omission material?

In *State* v. *Boring, supra,* it was held that the date and the name of the obligor were not material. If the name of the obligor, or the party for whose default the sureties agree to be responsible, is not material, how can it be said that the name of the decedent, for the administration of whose estate the obligor is responsible, is material? The sureties agreed to answer for the default of the obligor, who is responsible and must answer for default in faithful administration of decedent's estate; and if the name of one is not material, neither is the name of the other. There can be no escape from this conclusion. Again, the administratrix is the obligor; they are one and the same person; and if the name of the obligor is not material to the validity of the bond, the name of the administratrix, who is identically the same person, can not be material. The trend of later decisions seems to be against relieving sureties on bonds because of technicalities or irregularities which are not vital and wholly destructive of the obligation itself. The names of sureties left blank in the body of an instrument, and no seal appearing to the signatures, was held insufficient to terminate liability of sureties in *Stevens* v. *Allmen,* 19 O. S., 485.. See also *McLain* v. *Simmington,* 37 0. S., 484; *Partridge* v. *Jones,* 38 O. S., 375. Again, fewer seals than signatures appearing on a bond, it was held that parol evidence might be admitted to show that two or more of the signers adopted the same seal (45 O. S., 664). This was before private seals were abolished, and the seal was absolutely essential to the validity

of an instrument under seal, such as a bond. Where, by mistake, "administrator de bonis non" was inserted in the body of a bond instead of "administrator *de bonis non* with the will annexed," the surety was held liable. *Newburger* v. *Finney,* 17 C. C., 215.

A close analysis of all recent cases in Ohio and other states clearly indicates that the tendency of modern decisions is toward the adoption of the rule laid down in *Cyc* (text), Vol. V, 739, which is as follows:

"A bond takes effect by delivery; therefore, where one executes a bond and delivers the same to another, he will be bound thereby, and his liability will not be affected by the fact that there are blanks in the instrument, when executed, provided he executed it with knowledge thereof, and in the absence of fraud in filling up such blanks, since he consents by implication in such case that they may be so filled."

It is difficult to understand how fault can be found with this rule, and it will be applied in this case.

When plaintiffs in error, Weinstein and Souhrada, signed this instrument or bond, they knew there were blank spaces to be filled. The paper was before them. They could not possibly be ignorant of the fact that the blanks had not been filled in. They also knew, and could not help but know, that these blanks would be subsequently filled in. They were put upon inquiry as to the matters of which they now complain. They had a right, before they signed the bond, to insist that these blanks be filled in, or to demand a written stipulation as to how the blanks should be filled; but having freely and voluntarily signed and delivered it to some one, not named in the agreed statement of facts, they will be presumed to have impliedly consented to the blanks being filled in, as they subsequently were; and in the absence of fraud in so filling in these blank spaces, they must be held liable. They say, however, that they signed the bond at the instance of James Gilbert, who represented to them that he, James Gilbert, intended to be appointed administrator of the estate; but at the time of the alleged representations the application of Elizabeth Gilbert for letters of administration of this estate had been on

file in the probate court for over two months, and her name was signed to the paper before they signed it. As the statute stood during this time, Elizabeth Gilbert was required to file her final account within eighteen months of the date of her appointment. She did not do so. She resigned December 30, 1908, four years after her appointment, without having filed such account; in fact she did not file a final account until she was compelled by order of the court to do so. During all this time these sureties remained passive and quiescent. They took no steps to protect themselves. They could have been released from this bond at any time after Elizabeth Gilbert qualified as administratrix. The statutes, Section 2604, Revised Statutes (General Code 10861, 2), afforded a full and ample protection in this respect. They did not see fit to avail themselves of the remedy the law provides for sureties whose confidence is or may be abused by their principals. Their duty to themselves and to the estate of the decedent required them to keep informed as to the due course of the administration of the estate, and, having failed to do so, they ought to be now estopped from complaining of a situation, largely if not wholly due to their own negligence and laches. In their answer they do not aver that there was any fraud practiced upon them, and the most that is claimed in the agreed statement of facts is, that James Gilbert represented to them, and they understood, that the said James Gilbert intended to be appointed administrator. If the representation was in fact made, it does not amount to a fraud upon them. In *Sterns* v. *People*. 102 Ill., 540, it appears that one signature to a bond was forged; and the other surety signed the bond believing the forged signature to be genuine; but it was held that this was no defense, and the surety who did sign was held liable, even though he signed under the belief that there was another surety on the bond. Certainly these facts tend strongly to raise a presumption of fraud, but the surety was held liable on the bond.

For the reasons indicated, the judgment of the municipal court will be affirmed.